### Timothy Weston *vs.* Seth Ames, Administrator.

n an action against a sheriff for the default of his deputy in not paying money made by him on an execution, which he returned satisfied, and on which he sold chattels alleged by him in his return to have been the property of the execution debtor, the sheriff cannot defend by evidence tending to show that said chattels were the property of a third person, who forbade the sale thereof and directed a suit to be brought against the deputy for a trespass, without evidence that such suit was commenced and a judg ment recovered against the deputy. Whether proof of such judgment would consti tute a defence — *quære.*

A cause of action against an officer, for not paying money collected by him on execu tion, does not accrue until demand is made on him for payment; and the statute of limitations begins to run from the time of the demand.

Trespass upon the case, under the Rev. Sts. *c.* 14, § 66, against the administrator of Benjamin F. Varnum, late sheriff of Middlesex, for an alleged default of John Kimball, a deputy of said Varnum. The defendant pleaded the general issue, and gave notice of his intention to rely on the statute of limitations — Rev. Sts. *c.* 120, § 3. At the trial before *Wilde,* J. the plaintiff introduced evidence that, on the 18th of December 1833, he sued out a writ against Daniel Boyes, returnable at the March term of the court of common pleas, in 1834, and placed it, on the same day, in said Kimball's hands for service ; that Kimball made return that he had attached thereon " one horse, one sulky and harness, and ten thousand feet of boards, as the property of said Boyes ; " that the writ was duly entered, and that the plaintiff, at September term 1834, recovered judgment against Boyes for $73·03 damages, and $17·38 costs of suit ; that execution was sued out and delivered to Kimball for service, within thirty days from the rendition of judgment, and that said Kimball's return thereon was, that he, by virtue thereof, seized eight thousand feet of boards, and two and a half thousand feet of joists, and sold the same for the sum of $100·81, which was the amount of the execution and his fees and expenses, and that he therefore returned the execution fully satisfied ; that the plaintiff demanded payment of Kimball, within four years before the commencement of this action, and that Kimball died insolvent, without paying the plaintiff.

The defendant then gave in evidence a duly recorded mortgage from said Boyes to Thomas Nesmith, dated December 26th 1833, of 50,000 feet of lumber, consisting of boards, planks and joists, lying at the head of Pawtucket Canal, in Lowell, to secure payment of three notes of Boyes, amounting to $385·25; also an assignment of said mortgage to Cyril Coburn, dated March 5th 1834, and one of the notes secured by said mortgage, on which the sum of $200 was due, indorsed by said Nesmith to said Coburn.

Thomas Nesmith was called as a witness by the plaintiff, and testified, that when the aforesaid mortgage was given to him, the lumber was in one pile, and that Boyes had no other lumber; that the witness knew, before the mortgage was given, that the lumber had been attached, and that a notice to that effect had been posted on the pile.

Cyril Coburn testified, that on the 18th of February 1834 he made a contract with Boyes, Isaac Lovejoy and W. G. Lovejoy, to build a block of houses for him; that he found there was a difficulty about getting some of said lumber, on account of the mortgage to Nesmith, and therefore he purchased that mortgage, and directed Boyes to remove the lumber for him, and that it was removed to two different places in Lowell; that afterwards, on finding that Kimball was about to sell part of the lumber on execution, he objected and ordered a suit to be commenced against him for trespass; that the lumber which was sold by Kimball on the execution against Boyes was a part of the lumber included in the mortgage; and that, when he purchased the mortgage, the lumber lay in one pile. On cross-examination, this witness stated that Boyes and the Lovejoys were to furnish lumber for the block to be built by them, and that he took the assignment of the mortgage to enable them to complete their contract by using the lumber; and that he knew, before he took the assignment, that the attachment had been made.

Daniel Boyes testified that the Lovejoys employed one Newhall to remove the lumber, after Coburn directed it to be removed; that Kimball's permission to have it removed

21 *

was first obtained; and that I. Lovejoy receipted for the boards that were attached. He also testified that one Conner had about 1000 feet of the lumber, but could not recollect whether he took it before or after it was removed by Newhall.

Jonathan Bowers testified that, while Boyes's lumber lay at the Pawtucket Canal, it was attached by Kimball, who appointed the witness to be keeper thereof; that he was about the lumber yard, more or less, every day, and that his counting room was in sight of the lumber; that, in the spring of 1834, Kimball directed the witness to permit the lumber to be removed, and that when it was removed, there were from forty to fifty thousand feet of it; that a notice of the attachment was posted at the end of the boards, about the middle of the pile, and that there was nothing in the notice to indicate that a part of the boards, and not the whole, was attached; that Kimball told him the pile was attached, and desired him to take care of it.

Isaac Lovejoy testified that he gave a receipt to Kimball, in the summer of 1834, for 10,000 feet of boards attached on the plaintiff's writ against Boyes; that he considered the lumber unsafe at the canal, and removed it in August or September 1834; that Kimball thought it best to have it removed; and that the receipt had been given up, and could not be found.

Upon this evidence, which was uncontradicted, the judge ruled that, in this action, the attachment made in the original suit against Boyes must be taken as valid, and the lien acquired thereby as subsisting in full force until the seizure upon the execution issued in that suit. A verdict was thereupon taken for the plaintiff, by consent, for the amount of the execution, with interest, subject to the opinion of the whole court upon the correctness of that ruling. `

*Ames, pro se.*

*Wentworth,* for the plaintiff.

HUBBARD, J.  To avoid a recovery in this case, the defendant contends that the whole default of the deputy

consisted in not keeping the attached property safely; that the attachment was lost through his neglect; and that the claim upon the sheriff for this default was barred by the statute of limitations, of which the defendant, as his representative, may avail himself in defence of this action. But we are of opinion, that whether the attachment was originally invalid, or might have been defeated through neglect of the deputy, is not now a question open for examination; because the deputy, by receiving the execution, levying it upon the property, and returning it satisfied, has so far precluded the inquiry, that the defendant, who represents the sheriff, cannot avoid the return on the execution by merely relying on an alleged antecedent breach of duty, on the part of his deputy, in not holding the goods attached.

The evidence proves that the execution was duly committed to the deputy for service, was levied on property apparently a part of the same which was attached on mesne process, and was returned satisfied. It is said that the person claiming the property forbade the officer's selling it on execution, and directed a suit to be brought against him for trespass. But the sale did take place, and no evidence is offered to show that such a suit was ever commenced. We cannot, therefore, assume the fact of a recovery against him, to excuse the not paying over of the amount of the execution. We do not intend to decide whether an officer, when sued for not paying over the amount received by him, shall be estopped by his return from showing that goods taken and sold by him on execution were not the property of the judgment debtor.* The present case does not require it. So far as the facts are reported, they tend to prove that the chattels sold on execution were a part of the property attached on mesne process, and that the same was known and acquiesced in by the person claiming them under a mortgage title; and it so appearing, the officer shall be bound by his return that he has levied and satisfied the execution.

In respect to the statute of limitations, (Rev. Sts. *c.* 120,

---

* See *Brydges* v. *Walford*, 6 M. & S. 42, and 1 Stark. R. 389, *note*.

§ 3,) an officer is not bound to return into court the money made on an execution, nor to look up the judgment creditor, who may be at a distance, to tender it to him; but it is his duty to hold it safely till a demand is made upon him by a person authorized to receive it and give him a discharge; and consequently a cause of action will not accrue against him till after a demand. In this case, the suit was brought within four years after the demand, and the same is not barred by the statute.

*Judgment on the verdict.*